FILED
SUPERIOR COURT
OF GUAM

2014 OCT -9 PM 4: 20

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

PEOGLE OF GUAM,

vs.

KUMIKO NOMOTO CAMACHO,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CF 0295-11

DECISION AND ORDER ON
DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena III on July 23, 2014 on Defendant's Motion to Suppress Evidence. Assistant Attorney General Nicole D. Driscoll represents the Government and Assistant Public Defender Richard S. Dirkx represents Defendant. For the reasons set forth below, the Court denies the Motion.

## BACKGROUND

Per the Indictment returned on June 21, 2011, Defendant is charged with two counts of theft of property held in trust. The charges stem from Defendant's alleged theft of funds from her employer, Scuba Company (Scuba Co.), from 2009 to 2011. Prior to her arrest, Defendant's superiors at Scuba Co. confronted her about the missing funds and recorded the ensuing conversation in which Defendant made incriminating statements.

On June 13, 2014, Defendant filed her Motion. Defendant "moves to suppress all evidence of [the] confrontation [by Scuba Co. employees] and what was said, as well as the writings and statements which have been attributed to [her]." Defendant argues that, pursuant to Rule 408 of the Guam Rules of Evidence, the statements and recording must be excluded because the evidence arose in the midst of an attempt between Scuba Co. and Defendant to settle or compromise the matter. Defendant also argues that Scuba Co. employees contacted the



Guam Police Department (GPD) before meeting with her and, in violation of the Fourth Amendment, acted as agents of the GPD when they met with her and elicited incriminating statements from her.

The Government did not file a written opposition to Defendant's Motion, but opposed the Motion orally.[1] The Government argues that Rule 408 does not exclude the evidence because the purpose of the meeting was confrontation, not compromise. The Government further asserts that Scuba Co. employees never acted as agents of the GPD and thus the Fourth Amendment is not implicated.

On July 8, 18, and 23, 2014, the Court received testimony from Scuba Co. employees Ricardo Tincat, Tina Arriola, and Hiroyuki Nitsuma, heard oral argument, and took the matter under advisement.

## DISCUSSION

### I.    Evidence

The Court ascertained the following facts at the evidentiary hearing. Mr. Tincat is President of Scuba Co., while Ms. Arriola serves as co-owner and accounting manager and Mr. Nitsuma is a diving instructor. Scuba Co. employed Defendant for about six years. Around May 4, 2011, Scuba Co. employees discovered doctored receipts such that customers and funds received were underreported. As a result, Mr. Tincat, Ms. Arriola, and Mr. Nitsuma conducted research into company records to find other instances of theft. The Scuba Co. employees discovered that some receipts were not consistent with the number of customers or diving tours and concluded that over $40,000 was stolen over a two-year period. They initially identified a few possible culprits who held positions with access to receipts and funds, but eventually focused on Defendant. Although the Scuba Co. employees quickly decided to terminate Defendant, they were unsure of how to achieve restitution. Ms. Arriola contacted GPD with a general inquiry as to how to proceed in the matter. She indicated that there was a suspected theft at Scuba Co., but did not provide specific details, express a desire to pursue criminal charges, or receive advice as to how to proceed; the officer with whom she spoke indicated that she could pursue the matter criminally or civilly. No Scuba Co. employee consulted an attorney.

---

[1] On July 22, 2014, Defendant filed her Request for Opposition in Writing. The Court, in its discretion pursuant to 8 GCA § 1.27, permits the Government to oppose Defendant's Motion orally.

The Scuba Co. employees decided to confront Defendant and, on May 8, 2011, Mr. Tincat, Ms. Arriola, and Mr. Nitsuma met with Defendant at Scuba Co. Mr. Nitsuma was present to translate to English from Japanese, although Mr. Tincat indicated Defendant speaks English well and regularly communicated in English. The meeting lasted less than one hour and was tape recorded with Defendant's knowledge, as was regular practice at Scuba Co. for record-keeping of important meetings. During the meeting, Mr. Tincat questioned Defendant firmly but without yelling. Defendant acknowledged her responsibility for the theft. Defendant did not speak much and frequently replied through nods; she also admitted to the theft in writing. Mr. Tincat threatened criminal charges against Defendant but told Defendant that the authorities would not be notified if she repaid the stolen money within two days. Defendant agreed to do so, but did not attend a subsequent meeting with Scuba Co. regarding the repayment. Unable to contact Defendant and with the funds not repaid, Ms. Arriola called GPD again on May 13, 2011 to press charges; police were informed of the meeting at that time.

## II.    Suppression[2] under Rule 408

First, Defendant argues that the meeting and later attempts by Scuba Co. to contact Defendant "were part of an effort to compel [Defendant] to accept liability for a large sum of money, to establish a sum that would satisfy the victim's business, and to compel [Defendant] to pay the sum as soon as possible." Accordingly, Defendant seeks to exclude the evidence pursuant to Guam Rule of Evidence 408, which provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

---

[2] Guam law is silent as to the appropriateness of a motion to suppress versus a motion in limine in this context. Insofar as a motion to suppress is not the appropriate vehicle with which to seek exclusion of evidence pursuant to Rule 408, the Court construes Defendant's request as a motion in limine.

Because "[t]he Guam Rules of Evidence are essentially identical to their like-numbered counterparts in the Federal Rules of Evidence[, . . .] interpretations of the Federal Rules of Evidence from other jurisdictions are persuasive authority." Blas v. Cruz, 2009 Guam 12, ¶ 14 (internal citations omitted). The Guam Supreme Court has not addressed the close question of whether Rule 408 applies to both criminal and civil proceedings. Federal appellate courts are divided on the issue. United States v. Technic Servs., Inc., 314 F.3d 1031, 1045 (9th Cir. 2002) (applying Rule 408 in criminal case), overruled on other grounds by United States v. Contreras, 593 F.3d 1135 (9th Cir. 2010); United States v. Bailey, 327 F.3d 1131, 1144-47 (10th Cir. 2003) (surveying circuit split and concluding that Rule 408 "bar[s] settlement evidence in both criminal and civil proceedings"); Manko v. United States, 87 F.3d 50, 54–55 (2d Cir. 1996) ("the policy considerations that generally exclude settlement evidence in civil proceedings are not applicable in the criminal context"). The Court concludes that Rule 408 is applicable to criminal proceedings because the Rules of Evidence explicitly "apply generally to civil actions and proceedings [and] to criminal cases and proceedings" under Rule 1101, because nothing in Rule 408 indicates that it is inapplicable to criminal proceedings, and because the final sentence of Rule 408 would be unnecessary if the rule applied only in the civil context.

Here, Scuba Co. employees believed that they had discovered a crime and confronted Defendant about her involvement. There is no evidence that either side assented to engaging in a settlement discussion as Defendant's actions during the meeting were passive, while the behavior of Scuba Co. employees was consistent with that of attempting to confront a suspected wrongdoer and recoup a loss, rather than with that of attempting to initiate negotiations. Although the testimony established that Scuba Co. sought repayment and Defendant agreed to repay, there is insufficient evidence to conclude that the meeting was a settlement negotiation as contemplated by Rule 408. To be sure, Rule 408 promotes settlement and Defendant apparently promised to furnish "valuable consideration" to resolve the matter. Rule 408, however, applies to "a claim which was disputed as to either validity or amount" and Defendant disputed neither her responsibility nor the amount. Thus, Rule 408 does not apply to exclude evidence in the instant matter because the testimony did not reveal "an actual dispute, or at least an apparent difference of view between the parties concerning the validity or amount of a claim." Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 526 (3d Cir. 1995); Dallis v. Aetna Life Ins. Co., 768 F.2d 1303, 1307 (11th Cir. 1985) (holding Rule 408 does not apply where "[t]here is

no evidence in the record that either the validity or the amount of the payment was ever the subject of dispute."); In re B.D. Int'l Disc. Corp., 701 F.2d 1071 (2d Cir. 1983) (holding entry in financial statement was not excludable as evidence of conduct or statements made in compromise negotiations where, at time of negotiation, the debtor did not dispute bank's claim but was merely seeking more time to pay).

Moreover, Scuba Co. employees threatened to report Defendant's theft as a criminal matter, but made no mention of pursuing civil recourse. That is, a civil claim was neither outstanding nor contemplated. It was therefore impossible to engage in settlement negotiations because all parties lacked the authority to resolve a criminal matter. Though Scuba Co. employees could agree to decline to report the crime, such an agreement among private citizens would not withstand a subpoena to testify regarding Defendant's theft if Defendant eventually faced prosecution.

In addition, excluding the evidence at issue would create the impractical consequence of excluding inculpatory statements elicited by a victim of a crime for which there is civil recourse who confronts a perpetrator about the damage caused or the perpetrator's responsibility therefor—or, similarly, when a perpetrator confronts a victim about the same. The Court recognizes the importance of promoting settlement, but will not construe Rule 408 so broadly as to transform any interaction between victim and perpetrator into an excludable settlement negotiation; such a broad construction would work to the detriment of victims as well as against the admissibility of probative evidence in criminal proceedings.

Finally, it is clear that Defendant reneged on any purported settlement. Thus, even if the evidence at issue fell within the purview of Rule 408, the Court would decline to rule on the admissibility of the challenged evidence until trial so as to determine the exact purpose(s) for which the Government would seek to admit it. Blas v. Cruz, 2009 Guam 12, ¶ 14 ("Extensive case law finds Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim.") (citing Cates v. Morgan Portable Bldg. Corp., 780 F.2d 683, 691 (7th Cir. 1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.")).

## III. Suppression under the Constitution

Defendant next seeks suppression on constitutional grounds and asserts that "[i]t is axiomatic that the Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as instruments or agents of the Government." At the outset, the Court observes that there is no evidence in the record to support a finding of agency between the GPD and Scuba Co. employees. It is true that Ms. Arriola called the GPD, mentioned Scuba Co., related the suspected theft, and an officer advised her of Scuba Co.'s potential civil and criminal recourse. However, the call was a brief, general inquiry in which Ms. Arriola evinced no intent to press charges and during which there was no discussion of confronting Defendant. There is likewise no indication that the police requested or recommended any actions of Scuba Co. or otherwise commenced an investigation. Moreover, Mr. Tincat, Mr. Nitsuma, and Scuba Co.'s owner in Japan, Hitoshi Hamaoka, never spoke to GPD prior to the meeting and it was only after the meeting that Ms. Arriola contacted police to press charges against Defendant. There is simply no evidence that GPD participated in the confrontation and questioning of Defendant or that, in doing so, any Scuba Co. employee intended to assist law enforcement.

In addition, there is no evidence to suggest that Scuba Co. employees subjected Defendant to search or seizure. Defendant, rather, seeks to suppress statements elicited during the meeting at Scuba Co.—a meeting Defendant willingly attended and which did not result in the seizure of her person or property. The two cases cited by Defendant do not lend support to her position, as neither case involves incriminating statements and both cases found the absence of an agency relationship. In United States v. Jarrett, the Fourth Circuit held that no agency relationship existed between a computer hacker and the government where the hacker accessed the defendant's computer to retrieve evidence of child pornography to assist the government, but where the government did not actively participate in the hacker's private search. 338 F.3d 339, 344-48 (4th Cir. 2003). In Coolidge v. New Hampshire, the Supreme Court held that the defendant's wife did not act as an instrument or agent of the state where she "of her own accord produced [defendant's] guns and clothes for [police] inspection" and "described her own motive as that of clearing her husband" as opposed to that of assisting police. 403 U.S. 443, 487-89 (1971). Further, the Court is unconvinced that the Fourth Amendment is implicated by the recording device utilized during the meeting, as Mr. Tincat and Ms. Arriola credibly testified

that Defendant was aware of its presence at the meeting and that the recording of meetings was common practice at Scuba Co. See Silverman v. United States, 365 U.S. 505, 509-12 (1961) (search in violation of Fourth Amendment occurred when private conversations were monitored as a result of an "unauthorized physical penetration into the premises occupied" by the defendant); see also United States v. Jones, 132 S. Ct. 945, 949-53 (2012) (recounting Supreme Court's Fourth Amendment jurisprudence in considering "whether the attachment of a [GPS] tracking device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, constitutes a search or seizure within the meaning of the Fourth Amendment.").

Even assuming Scuba Co. employees questioned Defendant as agents of GPD, Defendant offers no authority to indicate that it is constitutionally impermissible for private citizens to question a person at the behest of law enforcement such that inculpatory information gleaned cannot be introduced against the person at trial. To the contrary, "'no interest legitimately protected by the Fourth Amendment is involved' because 'the Fourth Amendment does not protect a wrongdoer's misplaced belief that a person[, such as an undercover agent,] to whom he voluntarily confides his wrongdoing will not reveal it.'" United States v. Henry, 447 U.S. 264, 272 (1980) (quoting Hoffa v. United States, 385 U.S. 293, 302 (1966) (internal brackets omitted)). "Similarly, the Fifth Amendment has been held not to be implicated by the use of undercover Government agents before charges are filed because of the absence of the potential for compulsion." Id. (citing Hoffa, 385 U.S. at 303-04). Moreover, in the context of the Sixth Amendment, one's right to be free from surreptitious Government interrogation— whether by the Government or by private agents thereof—is not implicated until the attachment of the right to counsel. Massiah v. United States, 377 U.S. 201, 204-06 (1964) ("We hold that the petitioner was denied the basic protections of [the Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents [through the cooperation of a co-defendant] had deliberately elicited from him after he had been indicted and in the absence of his counsel."); Henry, 447 U.S. at 269-71 (citing Massiah, 377 U.S. at 206). At the time of the meeting, Defendant was not arrested, indicted, or otherwise at a critical stage of criminal proceedings. The Court concludes, therefore, that there was no constitutional violation and suppression is unwarranted.

## CONCLUSION

In light of the foregoing, the Court DENIES Defendant's Motion to Suppress Evidence. Pretrial Conference is scheduled for December 31, 2014 at 3:00 P.M. and Jury Selection is set for January 13, 2015 at 9:00 A.M.

**IT IS SO ORDERED** this day of October 10, 2014.

_____
HONORABLE ALBERTO C. LAMORENA III
Presiding Judge, Superior Court of Guam